```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
BROADGATE INC., et al.,       )
                              )
        Plaintiffs,           )
                              )
   v.                         )    No. 09-cv-1423 (GK)
                              )
UNITED STATES CITIZENSHIP &   )
IMMIGRATION SERVICES, et al., )
                              )
        Defendants.           )
_____)
```

## MEMORANDUM OPINION

Plaintiffs Broadgate, Inc., Logic Planet, Inc., DVR Softek Inc., TechServe Alliance, and the American Staffing Association ("ASA") bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., and the Regulatory Flexibility Act, 5 U.S.C. § 601 et seq., against Defendants United States Citizenship and Immigration Services ("USCIS"), Alejandro Mayorkas, Director of USCIS, United States Department of Homeland Security, and Janet Napolitano, Secretary of Homeland Security. This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 3]. On July 7, 2010, the parties submitted a Joint Praecipe indicating their agreement with the Court's proposal to consolidate the hearing on the motion for a preliminary injunction with a determination on the merits under Federal Rule of Civil Procedure 65(a)(2). The parties presented oral argument at a Motions Hearing held on August 5, 2010. Upon consideration of the parties' arguments, the Motion, Opposition, Reply, and the entire

record herein, and for the reasons stated below, Plaintiffs' Complaint is **dismissed**.

**I. Background**

Plaintiffs Broadgate, Logic Planet, and DVR are software development and information technology firms which rely on a pool of foreign citizens and permanent residents in order to meet the hiring needs of their clients. Plaintiffs TechServe and ASA are not-for-profit membership corporations that qualify as small entities under the Regulatory Flexibility Act, 5 U.S.C. § 601(6), which supply temporary employees to other businesses. Plaintiffs Broadgate, Logic Planet, and DVR are third-party employers, as are the members of Plaintiffs TechServe and ASA, and all Plaintiffs are small businesses within the meaning of § 3 of the Small Business Act, 5 U.S.C. § 601(3). Compl. ¶¶ 3-7.

Plaintiffs regularly submit petitions to Defendant USCIS for H1-B visas on behalf of the foreign employees they wish to hire. See 8 U.S.C. § 1101(a)(15)(H)(i)(b) (H-1B visa program). The H-1B visa program permits aliens to enter the United States under a visa to perform services in a "specialty occupation," which is an occupation that "requires (a) theoretical and practical application of a body of highly specialized knowledge, and (b) attainment of bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). If approved, an H-1B visa

lasts for three years, and is renewable. 8 U.S.C. § 1184(g)(4); 8 C.F.R. §§ 214.2(h)(15)(ii)(B)(1), 214.2(h)(13)(iii)(A). While only 65,000 H-1B visas are permitted each fiscal year, 8 U.S.C. § 1184(g), USCIS has granted Plaintiffs and their members thousands of H-1B visas. <u>See</u> Pls.' Mot. for Preliminary Injunction [Dkt. No. 3] at 3.

In 2009, USCIS issued an immigration regulation, codified at 8 C.F.R. § 214.2, which sets forth special requirements for the admission, extension, and maintenance of status for certain "non-immigrant classes" ("Regulation"). One of the non-immigrant classes addressed is "temporary employees," which includes the foreign employees that Plaintiffs rely on in order to operate their businesses. The Regulation requires that H-1B petitions be filed by a "United States employer," defined as:

> [A] person, firm, corporation, contractor, or other association, or organization in the United States which (1) engages a person to work within the United States; (2) has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and (3) has an Internal Revenue Service Tax Identification number.

8 C.F.R. § 214.2(h)(4)(ii). Thus, the Regulation establishes five factors, referred to as the "control test," to assess whether there is an "employer-employee relationship" sufficient to grant an H-1B visa: whether the employer hires, pays, fires, supervises, or otherwise controls the work of an employee.

-3-

On January 8, 2010, Donald Neufeld, Associate Director of Defendant USCIS, issued a memorandum ("Neufeld Memorandum" or "Memorandum") to Service Center Directors relating to USCIS's H-1B visa program. Memorandum from Donald Neufeld, Associate Director, Serv. Ctr. Operations, USCIS, to Serv. Ctr. Dirs. (Jan. 8, 2010) (Ex. A to Pls.' Mot. for Preliminary Injunction) [hereinafter "Memorandum"]. The Neufeld Memorandum purports to clarify the Regulation's control test by setting forth eleven factors that adjudicators must consider in determining whether an employer-employee relationship exists between a sponsor and a candidate for a H-1B visa program. See Memorandum at 4-5. Plaintiffs argue, however, that the Neufeld Memorandum establishes a different standard from the Regulation's control test, and therefore constitutes a new, binding rule. Because the Memorandum was not issued in accordance with the APA's procedures for agency rulemaking, Plaintiffs argue that this new "rule" must be invalidated.

Plaintiffs bring five counts in their Complaint. In Count I, Plaintiffs claim that Defendants are liable for violation of the notice and comment requirements of the APA, 5 U.S.C. §§ 553, 706. In Count II, Plaintiffs claim that Defendants violated the Regulatory Flexibility Act, 5 U.S.C. § 601 et seq., by failing to perform a Regulatory Flexibility Act Analysis before issuing the Memorandum. In Count III, Plaintiffs claim that the Neufeld

Memorandum is in excess of regulatory and statutory authority under 8 C.F.R. § 214.2(h)(4)(ii) and the APA, 5 U.S.C. §§ 706(2)(A) and (C). In Counts IV and V, Plaintiffs claim that Defendants have engaged in arbitrary and capricious rulemaking in violation of 5 U.S.C. § 706(2)(A) and (D) because the Memorandum redefines the employer-employee relationship without justification or authority and was written by Neufeld, a USCIS employee not authorized by law to issue rules.

Defendants respond that the Neufeld Memorandum is not a substantive rule setting forth a new standard, but instead a policy statement or interpretive rule that clarifies the common law background of the Regulation's control test. Defendants therefore argue that Plaintiffs' Complaint is a broad programmatic challenge to one of its general policies--namely, the agency's internal guidelines for determining an employer-employee relationship for the H-1B program--which is not entitled to judicial review under § 702 of the APA. Defendants also argue that Plaintiffs fail to state a claim under the APA in Counts I and III-V because the Memorandum does not constitute final agency action subject to judicial review under § 704 and notice and comment rulemaking under § 553. See Defs.' Opp'n at 13-26. Finally, Defendants argue that Count II fails to state a claim because the Regulatory Flexibility Act does not apply to guidance documents or interpretive statements such as the Memorandum. See 5 U.S.C. §§ 603(a), 604(a).

**II. Standard of Review**

The first requirement for judicial review under the APA is that the complaint must challenge "agency action." 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 890, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001). Programmatic challenges lacking "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him" do not qualify as agency action, and so are not "ripe" for judicial review under the APA. Lujan, 497 U.S. at 891.

Second, the challenged agency action must be "final." 5 U.S.C. § 704 (authorizing judicial review under APA of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court"); Lujan, 497 U.S. at 882. Final agency action "must generally 'mark the consummation of the agency's decisionmaking process' and either determine 'rights or obligations' or result in 'legal consequences.'" Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 800 (D.C. Cir. 2006) (quoting Bennett v. Spear, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)) (emphasis in original). Legislative or substantive rules are, by definition, final agency

action, while interpretive rules and general policy statements are not. Id. at 805-07.

Notice and comment procedures are only required under APA § 533 for legislative rules with the force and effect of law; "interpretive rules, general statements of policy, or rules of agency organization procedure, or practice" are exempted. 5 U.S.C. § 553(b)(A) ; see also Nat'l Ass'n of Broadcasters v. FCC, 569 F.3d 416, 425-26 (D.C. Cir. 2009). Finally, the Regulatory Flexibility Act, 5 U.S.C. §§ 601-612, only applies when an agency is required to publish general notice of proposed rulemaking. 5 U.S.C. §§ 603(a), 604(a).

**III. Analysis**

First, the parties dispute whether USCIS's issuance of the Neufeld Memorandum constitutes agency action. Defendants argue that it is not, and that Plaintiffs' action is a non-justiciable programmatic challenge to USCIS's administration of the H-B1 visa program.

In RCM Technologies, Inc. v. United States Dep't of Homeland Security, 614 F.Supp.2d 39 (D.D.C. 2009), this District Court considered whether a group of employment recruiters could challenge USCIS's alleged policy requiring that foreign occupational and physical therapists possess master's degrees in order to obtain H-1B visas. Relying on Lujan, the court concluded that the plaintiffs' challenge to the alleged policy was not reviewable

under the APA. RCM Technologies, 614 F.Supp.2d at 44-45. Instead, the proper challenge would have been to a specific denial of a visa application by the agency. Id. at 45; see also Sierra Club v. Peterson, 228 F.3d 559 (5th Cir. 2000).

Plaintiffs seek to distinguish RCM Technologies on the ground that Defendant USCIS argues that the Neufeld Memorandum is either a policy statement or an interpretive rule. If the Court accepts the Government's argument that the Memorandum is an interpretive rule, Plaintiffs argue, then the Memorandum constitutes agency action under Lujan and RCM Technologies.[1] At this juncture the Court need not decide whether the Memorandum constitutes a policy statement or an interpretive rule because the parties have raised an equally dispositive issue: whether the Memorandum is a legislative rule, which it must be under the APA to qualify as final agency action subject to judicial review. See Center for Auto Safety, 452 F.3d at 805-07 (only agency rules that establish binding norms or agency actions that occasion legal consequences are subject to review under the APA).

---

[1] Plaintiffs also seek to distinguish RCM Technologies on the ground that the parties in that case disputed whether the policy in question even existed. Pls.' Reply at 5 n.2. Because the District Court in RCM Technologies drew its conclusions regarding the action's reviewability on the assumption that the alleged policy did in fact exist, this argument is unpersuasive. 614 F.Supp.2d at 43-45.

If the Memorandum is a legislative rule, then it is final agency action under the APA subject to judicial review, and it is subject to notice and comment rulemaking under § 553. However, as just stated, if the Memorandum is an interpretive rule or general policy statement, the opposite is true: it is not final agency action subject to judicial review under the APA and it is not a "de facto rule or binding norm that could not properly be promulgated absent the notice-and-comment rulemaking required by § 533 of the APA." Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 806 (D.C. Cir. 2006). As explained above, the Memorandum is subject to the Regulatory Flexibility Act only if notice and comment rulemaking is required.

Whether a disputed "rule" is a legislative rule turns on whether it has "the force of law," meaning that "Congress has delegated legislative power to the agency and [] the agency intended to exercise that power in promulgating the rule." Am. Mining Congress v. Mine Safety & Health Admin., 995 F.2d 1106, 1109 (D.C. Cir. 1993). The agency's intent to exercise legislative power may be shown where the second rule effectively amends the previously adopted legislative rule, either by repudiating it or by virtue of the two rules' irreconcilability. Id. Another indication of a legislative rule is whether, in the absence of the rule, the agency would lack an adequate legislative basis to ensure the

performance of duties. Id. at 1112.[2] In contrast, a good indication of a general policy statement is the agency's use of permissive, rather than binding, language; if the "rule" leaves the agency free to exercise discretion, it is likely a policy statement. Id. at 1111.

First, Plaintiffs argue that the Neufeld Memorandum is a legislative rule because it is binding, both on its face and as applied. However, the evidence demonstrates that the Memorandum is intended to provide only guidance for application of the Regulation, not to establish independent binding rules. To begin with, the Memorandum states as much: it declares that it "is intended to provide guidance, in the context of H-1B petitions, on the requirement that a petitioner establish that an employer-employee relationship exists and will continue to exist with the beneficiary throughout the duration of the requested H-1B validity period." Memorandum at 1. In addition, the Memorandum explains that the impetus for its issuance was the "lack of guidance" on the Regulation's application, which in some contexts, including third-party employment, "has raised problems." Id. at 2.

---

[2] The parties do not dispute that, in the absence of the Memorandum the agency has an adequate basis--the Regulation--to ensure the performance of its duties in reviewing and approving or denying H-1B visa applications. Am. Mining Congress, 995 F.2d at 1110. The Court's analysis thus focuses on whether the Memorandum is binding on USCIS adjudicators or substantively amends the Regulation.

The Memorandum also explains that the approach it relies on to interpret the definition of "employer-employee relationship" under the Regulation is in keeping with the agency's long-standing approach: "[t]o date, USCIS has relied on common law principles and two leading Supreme Court cases [Nationwide Mutual Ins. Co. V. Darden, 503 U.S. 318, 322-23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) and Clackamas Gastroenterology Assoc. v. Wells, 538 U.S. 440, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003)] in determining what constitutes an employer-employee relationship." Id. The Memorandum states that its eleven factors are derived from the common law, and the Memorandum emphasizes that "no one factor [is] decisive" and that "the common law is flexible about how [they] are to be weighed." Id. at 5. On its face, then, the Memorandum clearly does not purport to establish a new substantive rule with binding effect.

Turning to the Memorandum's application, there is no evidence that it either binds USCIS adjudicators or requires a different outcome for third-party employers like Plaintiffs than the Regulation does. In fact, in addition to emphasizing that no single factor among the eleven is dispositive, the Memorandum instructs USCIS adjudicators to look to the totality of the circumstances in each case to determine whether there is an employer-employee relationship. Id. at 4.

Plaintiffs respond by arguing that the Memorandum "ordains the result in any petition filed by a third-party contractor" because it describes scenarios involving business models identical to Plaintiffs' and instructs adjudicators that such third-party employers do not exercise sufficient control to find an employer-employee relationship. Pls.' Reply at 10; Memorandum at 6-7, 14-15. However, the Memorandum makes very clear that the scenarios are "meant to be illustrative examples." Memorandum at 5 n.7. Indeed, Plaintiffs do not dispute that USCIS has approved four H-1B visa applications by third-party employers since the Neufeld Memorandum was issued, thereby indicating that the scenarios do not pre-ordain the outcome of Plaintiffs' H-1B visa applications. Defs.' Opp'n at 41-42. Because the Memorandum, both on its face and in its application, leaves USCIS adjudicators considerable discretion in applying the eleven factors, the Court concludes that it is not binding.

Second, Plaintiffs argue that the Memorandum effectively amends the Regulation because its eleven factors "do not merely add crispness to guidelines," but instead replace the five-factor control test. Pls.' Reply at 6. Specifically, Plaintiffs point to three factors in the Memorandum which they argue are unrelated to control: (i) does the beneficiary use proprietary information of the petitioner to perform the duties of employment; (ii) does the beneficiary produce an end product that is directly linked to the

petitioner's line of business; and (iii) does the petitioner provide the tools or instrumentalities needed by the beneficiary to perform the duties of employment. Id. at 11; Memorandum at 4-5.

While Defendants have not identified any common law authority for these three factors, the question before the Court is not whether the agency has properly interpreted the common law, but whether the Memorandum's inclusion of these factors substantively amends the Regulation by repudiating it or by rendering the two irreconcilable. See Ctr. for Auto Safety, 452 F.3d at 808. The control test states that an employer-employee relationship may be established for employers who hire, pay, fire, supervise, or, in a catch-all provision, "otherwise control the work of [an] employee." 8 U.S.C. § 214.2. Because the catch-all provision's breadth means the agency possesses wide latitude in interpreting the Regulation, the three factors that Plaintiffs challenge cannot be said to substantively amend the Regulation's control test.[3]

Plaintiffs argue in the alternative that the Memorandum substantively amends the agency's Adjudicator's Field Manual, which

---

[3] Plaintiffs' likely response is that the Memorandum's inclusion of these factors, even if not a substantive amendment of the Regulation, marks a shift in the agency's interpretation of the Regulation which requires notice and comment. See Pls.' Mot. at 11-12; Envt'l Integrity Project v. EPA, 425 F.3d 992 (D.C. Cir. 2005). However, the Neufeld Memorandum constitutes the agency's first written guidance on the definition of "employer-employee relationship" under the Regulation. In the absence of evidence that the use of these three factors is inconsistent with a prior interpretation of the agency, this argument must be rejected.

is binding on USCIS adjudicators. However, as the Government explains, the Manual provides that memoranda lacking the designation "P", such as the Neufeld Memorandum, are merely advisory. See USCIS, Adjudicator's Field Manual § 3.4(a) (2010). In addition, the Manual's statement that "[p]olicy material is binding on all USCIS officers and must be adhered to unless and until revised" simply refers to the fact that an agency's interpretation of its own regulations is binding, see Am. Mining Congress, 995 F.2d at 1110, not that the guidelines establish an independent source of binding legal authority. See also Defs.' Opp'n at 24-25.

To summarize, the Court concludes that the Memorandum establishes interpretive guidelines for the implementation of the Regulation, and does not bind USCIS adjudicators in their determination of Plaintiffs' H-1B visa applications. In addition, the Court is satisfied that the Memorandum does not amend the Regulation by repudiating or being irreconcilable with it. The Memorandum therefore does not constitute a legislative rule.

This conclusion also comports with the more general test established in Bennett v. Spears for determining when agency action is "final": "the action must mark the 'consummation' of the agency's decision making process - it must not be of a merely tentative or interlocutory nature. . . . [and] the action must be one by which rights or obligations have been determined, or from which legal consequences flow." 520 U.S. at 177-78 (citation and

internal quotations omitted). For the reasons stated, even if the Court were to consider the Memorandum to be the "consummation" of the agency's decision making process--which it does not--the Memorandum does not determine, as a matter of law, the rights or obligations of H-1B visa applicants, the agency, or any other entity, and no discernible legal consequences flow from it. <u>See also</u> <u>Ctr. for Auto Safety</u>, 452 F.3d 798 (concluding that guidelines issued by the National Highway Traffic Safety Administration which interpreted the scope of an agency regulation were not final agency action, and therefore not reviewable under the APA).

In short, the Memorandum does not constitute final agency action subject to judicial review and the notice and comment requirements under the APA. Counts I, III, IV, and V alleging violations of the APA must therefore be **dismissed** for failure to state a claim under § 704. The only remaining count in the Complaint, Count II, which alleges a violation of the Regulatory Flexibility Act, must also be **dismissed**, as the Memorandum is not subject to notice and comment or publication, since it is not a legislative rule, and thus the statute does not apply.

**CONCLUSION**

For the reasons set forth above, this case is **dismissed with prejudice**. A separate Order will accompany this Memorandum Opinion.


August 13, 2010                          /s/
                                         Gladys Kessler
                                         United States District Judge

<u>Copies to</u>: attorneys on record via ECF